James B. FLOWERS, Plaintiff-Appellee,

v.

SOUTH CENTRAL BELL TELEPHONE COMPANY, Defendant-Appellant.

Supreme Court of Tennessee,
at Jackson.

June 25, 1984.

Edwin E. Wallis, Jr., Jackson, for defendant-appellant.

George L. Morrison, Jackson, for plaintiff-appellee.

## OPINION

BROCK, Justice.

The trial court granted to the employee in this case worker's compensation benefits for permanent total disability which he found to have resulted from a heart attack arising out of and in the course of the plaintiff's employment. The defendant appealed, asserting that the decree of the trial court is without support in the evidence. We find in the record material evidence to support the finding of the trial court that the plaintiff's heart attack and resulting disability arose out of and in the course of his employment; accordingly, we affirm the judgment of the trial court.

It is a settled rule of decision in this jurisdiction that an employee's death or disability which results from a heart attack that is causally related to his employment is compensable under the worker's compensation act as arising out of and in the course of his employment, although prior to the attack, he suffered from arteriosclerotic heart disease and although the attack was produced by only ordinary exertion and usual strain of the employee's work. *Ward v. Commercial Insurance Company*, 213 Tenn. 100, 372 S.W.2d 292 (1963); *Coleman v. Coker*, 204 Tenn. 310, 312–313, 321 S.W.2d 540, 541 (1959); *Nashville Pure Milk Company v. Rychen*, 204 Tenn. 575, 579, 322 S.W.2d 432, 434–435 (1958); *Patterson Transfer Co. v. Lewis*, 195 Tenn. 474, 478, 260 S.W.2d 182, 184 (1953). Moreover, it is equally well established that an employer takes the employee as he finds him, that is, with his defects and pre-existing afflictions. *Coleman v. Coker, supra.* In *Swift & Co. v. Howard*, 186 Tenn. 584, 212 S.W.2d 388, 391 (1948) this Court said, in part:

"When an employer employs a workman he takes him as he is and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal, healthy person. If the injury is the proximate cause of disability, i.e., excites and aggravates a previous weakened condition then the employer is liable."

Thus, in each case of this type it is a question of fact which must be resolved by the trial court whether or not there actually was a causal connection between a heart attack and the employment.

### I

The plaintiff suffered a heart attack on January 5, 1982. He had worked for the defendant, South Central Bell, for 36 years and in 1974 had sustained a heart attack while working for the defendant which was classified as arising out of and in the course of his employment and for which he received compensation. Five and one-half months after the first heart attack the plaintiff returned to work and continued to perform his duties as a coin telephone repairman and installer.

On January 5, 1982, the plaintiff went to work at 8:00 a.m. and while carrying a telephone weighing approximately 45 lbs. began to suffer chest pains. At that time he was also carrying tools which weighed approximately 5 lbs. He continued to perform his tasks although the pain persisted. About 2:30 p.m. the pain became rather severe while he was working on a telephone at the Americana Motel in Jackson, Tennessee. He explained the nature of his work at that point as follows:

"Yes, and I think, in my opinion, I kind of believe that is the one that done the trick, because that phone, ever since it was installed, you can't hardly get it apart, to get to the back and work on it, and then, you can't hardly get it back together. You are just jerking and beating and banging on it, to get it to go back together."

While working on this telephone at the Americana Motel the plaintiff's pain became so severe that he quit his tasks and went to a nearby restaurant to obtain a cup of coffee and to rest. At about 2:30 p.m. the plaintiff left the restaurant and went to a nearby hospital, the Jackson Clinic, where he was admitted with a diagnosis of having a heart attack. Two weeks later, on January 18, 1982, the plaintiff underwent a triple bypass heart artery surgery procedure.

Regarding his duties on the day of this heart attack, the plaintiff further testified:

"The traffic up and down Highland (Avenue) was heavy that day, just stop and go traffic. As a matter of fact, when I was trying to get back to town, well, I thought that I never would make it, because the traffic was so heavy that I couldn't pass anybody, and I was just dragging along, and dragging along, and it just seemed that the more I was dragging, the more chest pains I was having. I had made approximately six stops during this period.

"Q. Well, now, you made about six stops to service phones, is that what you are saying?

"A. Yes, and the last one that I was working on was at the Americana Motel."

Dr. Wayne Wolfe, a specialist in internal medicine, who saw and treated the plaintiff on this occasion testified, in part, that:

"During the course of the initial interview, he revealed a history of nine years duration of arteriosclerotic heart disease, first manifest in 1974 by his admission to Jackson-Madison County General Hospital, at that time with acute myocardial infarction involving the back wall, or the posterior wall, of the heart.

"His second myocardial infarction occurred in January of 1982 in the same area."

When asked whether or not the activities of Mr. Flowers on the day of the instant heart attack aggravated or could have accelerated his heart attack, Dr. Wolfe testified:

"The first thing I would say is a man with Mr. Flowers' disease is literally like a lit bomb .... Activity can certainly cause the event to occur, and yes, it can become in my opinion, precipitated."

At another point Dr. Wolfe was asked a hypothetical question and he responded as follows:

"Doctor, I'm going to ask a hypothetical question. Assuming on the day he had this heart attack while on the job, that from 8:00 a.m. until about 12:00 p.m. he had been driving the phone company van, straight shift, in heavy traffic, parking and going out of various places, repairing coin telephones, carrying tools, some 5 lbs., and shortly after 8:00 a.m. lifted about a 45 lb. coin phone, carried it about 30 feet and began having vague chest pain which became severe and he went to the clinic at about 2:30, tell us what your feelings are about these assumed facts that I have set forth.

"A. The situation here is one of a man with a disease process that has been present for nine years * * * You have a disease process which is obviously progressing * * * Unfortunately the patient was expected to lift as his job description, the telephones weighing 45 lbs. .... We have disease with the progression I have outlined. How much I related to work itself producing the heart disease is hard to say totally but triggering things do happen to these people; yes, indeed.

\* \* \* \* \* \*

"It was a tightness, gripping-type pain brought on by activity."

■ We conclude that the testimony of plaintiff Flowers and the testimony of Dr. Wolfe, some of which is outlined above, furnished material evidence, when considered with the above discussed authorities, for the conclusion of the trial court that the plaintiff's heart attack and resulting disability arose out of and in the course of his employment.

## II

■ The defendant also argues that the trial court erred in decreeing that the benefits awarded in this case be commuted to one lump sum, as provided by T.C.A., § 50–6–229. We have dealt with this issue at some length in our recent decisions in *Fowler v. Consolidated Aluminum Corp.,* Tenn., 665 S.W.2d 713 (1984); *Mitchell v. Exxon Corp.,* Tenn., 665 S.W.2d 705 (1984); *Smith v. Gallatin Nursing Home,* Tenn., 629 S.W.2d 683 (1982); *Kelley v. 3–M Co.,* Tenn., 639 S.W.2d 437 (1982).

In the *Fowler* case we noted:

"Before the trial judge decides to commute an award he ought to be able to ascribe a good reason therefor arising from the evidence produced before him. The employee bears the burden of showing that it is in his best interest that the award be commuted rather than paid in installments. The reason most commonly advanced for commuting an award is that the plaintiff has some special need for receiving the money in a lump sum, as in the *Smith* and *Kelley* cases, *supra. See, also,* 82 Am.Jur.2d *Workmen's Compensation* § 654 (1976)." 665 S.W.2d at 715.

In his written findings of fact and conclusions of law in the instant case the Chancellor, in part, stated:

"On the issue of the judgment being commuted and paid in one lump sum, the plaintiff testified that he and his wife owned their own home and due to his heart condition he was unable to do any of the work around the house such as the yard work, maintenance, care and upkeep and his wife, who has high blood pressure, nevertheless, had assumed such obligations.

"Plaintiff and his wife wanted to purchase a condominium where they would not be burdened with the yard work, maintenance, and care and upkeep of a house. He further testified that if the judgment was commuted and paid in one lump sum, he and his wife would sell their house and have enough money to purchase a condominium.

\*    \*    \*    \*    \*    \*

"... and the court further finds that it is clearly for the manifest best interest of the plaintiff that the judgment be commuted and paid in one lump sum which will enable the plaintiff and his wife to purchase a condominium and live therein and not be burdened with the yard work, maintenance, care and upkeep of a house."

Testimony in the record, accredited by the trial judge, supports these findings. Accordingly, we find no error in the commutation of the award in this case to a lump sum. Here, as in the *Smith, Kelley* and *Mitchell* cases, *supra,* the plaintiff has shown that a special need exists for his receiving the compensation award in a lump sum and that it is, therefore, in his best interests that that be done.

■ Finally, we find no merit in the employee's position that the appeal in this case should be classified as a frivolous one under T.C.A., § 27–1–122, and that damages be awarded accordingly. Although we affirm the judgment of the trial court, we are not persuaded that the appeal in this case should be classified as frivolous.

The decree of the Chancellor is affirmed and costs are taxed against the appellant and surety.

COOPER, C.J., FONES and HARBISON, JJ., and TATUM, Special Justice, concur.