**Naomi Ruth BOONE, Appellee,**

v.

**BICS OF TENNESSEE, INC., Aetna Life and Casualty, and Sue Ann Head, Director of Worker's Compensation, Department of Labor, Appellants.**

Supreme Court of Tennessee, at Nashville.

Aug. 7, 1989.

Arthur E. McClellan, McClellan, Powers & Ehmling, P.C., Murfreesboro, for appellants.

Charles Patrick Flynn, Stanley A. Kweller, Flynn and Neenan, P.C., Dianne Stamey, Asst. Atty. Gen. and Charles W. Burson, Atty. Gen. & Reporter, Nashville, for appellee.

## OPINION

COOPER, Justice.

In this worker's compensation case, the trial court awarded Naomi Ruth Boone benefits for a permanent partial disability of fifty percent to the body as a whole. Appellants insist that the evidence preponderates against the trial court's holding that the injury was compensable. They also question the percentage of disability awarded, and the direction that benefits due appellee be paid in a lump sum. In turn, appellee insists the trial court erred in failing to find that she was permanently and totally disabled, and in dismissing the Second Injury Fund from the case. On our review, we affirm the judgment of the trial court on all issues except the order that benefits be paid in a lump sum.

Appellant, BICS of Tennessee, Inc., is a maintenance and janitorial company under contract to perform services in the Nissan plant in Smyrna, Tennessee. It maintains a trailer-office on Nissan premises and its employees are stationed throughout the Nissan complex on a full-time basis.

BICS entered into its contract with Nissan in December, 1985. Appellee, who was then working for BICS' predecessor, was employed by BICS as a technician and was assigned to work in the Nissan Training Center. According to BICS, appellee's duties "consisted of general janitorial duties such as cleaning, mopping, sweeping, dusting, basic housekeeping duties to include water(ing) plants, mov(ing) light furniture in connection with the cleaning duties." Appellee testified that she also was instructed by her supervisor, Larry Leslie, that "setting up and taking down classrooms was part of her job," and that he knew she regularly performed this task. Mr. Leslie was not called as a witness by BICS to contradict this testimony, though he still is working for BICS at the Nissan plant.

The record shows that in late December, 1985, Ms. Boone experienced pain in her lower back, which she could not relate to any specific event. Subsequently, she underwent a laminectomy at the L5–S1 level for the removal of a herniated disc. She

was released by her treating physician to return to work on February 26, 1986, without limitation or restriction on her physical activities.

Ms. Boone worked for BICS without incident until May 2, 1986, when she injured her back breaking down a classroom by laying tables on their sides and folding the legs. Ms. Boone immediately told Eric Little, a classroom instructor employed by Nissan, of her injury and her inability to complete her assigned work. Ms. Boone testified that she then attempted to locate her direct supervisor with BICS; that when she was unable to contact her supervisor, she made a telephone call to the trailer-office of BICS and told one of the ladies in the personnel office that she had injured her back breaking down tables and that it would be necessary for personnel to send another employee to finish her work as she was going to sign out and go home. Ms. Boone testified that she then walked from the Nissan Training Center to the BICS' office where she signed out in the presence of Gayle Perry and Janice Green.

On Monday, May 5, 1986, Ms. Boone went to see Dr. David Gaw, who had performed the earlier laminectomy. She worked for BICS on May 6 and May 7, 1986, and then was off from work until June 23, 1986. Ms. Boone testified that during the time she was off from work, she spoke with Mr. Richardson, the personnel manager of BICS, from time to time concerning her injury, treatment, and progress. The record also shows that Dr. Gaw completed at least two forms that were sent to BICS, one a disability insurance form, the other a Department of Labor Attending Physicians Report. Both forms carried the diagnosis of "aggravation of degenerative lumbar disc disease." In the disability insurance form, which is dated May 28, 1986, Dr. Gaw did not complete question 6, which asked "if disability is due to an accident, did injury occur at work?" In the second report dated June 9, 1986, but received at a later date by BICS, the history of the injury was reported as "hurt her back moving some furniture at work."

After her return to work on June 23, 1986, Ms. Boone worked until October 31, 1986. At all times she wore a heavy back brace prescribed by Dr. Gaw. Then, on November 6, 1986, Ms. Boone underwent a second laminectomy at the L5–S1 interspace. Dr. Gaw testified that the second laminectomy was necessitated by an injury independent of the one that caused the earlier laminectomy, and was consistent with the history of the work-related injury of May 2, 1986.

Appellee's testimony on the issue of notice and the scope of her work assignment was sharply disputed by witnesses called in behalf of BICS. Employees in the personnel office where Ms. Boone checked out early could not recall either the telephone call on the morning of the injury or any conversation with Ms. Boone when they gave her the time sheet to sign for early check-out. They admitted that the policy of BICS was to require the employee to give a reason for an early sign-out, but could not recall talking with Ms. Boone when she checked out early. The personnel manager of BICS testified he had no conversation with Ms. Boone in which she claimed to have injured her back while working for BICS, and that he heard no conversation between his office staff and Ms. Boone at the time of the early check-out, though he was in the position to do so as his desk was located nearby. He also testified that the breaking down and setting up of classrooms in the Nissan Training Center was outside the work assignment of Ms. Boone.

■ The trial judge, who had the opportunity to hear the testimony and observe the witnesses, accepted Ms. Boone's version of events and found that she sustained an injury in the course and scope of her employment for BICS and gave notice of her injury to BICS. On reviewing the evidence under the *de novo* standard of review prescribed in T.C.A. § 50–6–225(e), we can not say the evidence preponderates against the chancellor's findings on these issues.

Appellants also question the finding that Ms. Boone had sustained a fifty percent

disability of the body as a whole. Specifically, they question the basis of the assessment of anatomical impairment by Dr. Gaw and the efficacy, in general, of Dr. Gaw's testimony. They also insist that the medical evidence shows that Ms. Boone has not yet reached maximum medical recovery and that the assessment of physical impairment is premature. We find no merit in any of these arguments.

Both Dr. Rex Arendall, who saw Ms. Boone on referral, and Dr. David Gaw testified that Ms. Boone has a permanent physical impairment as the result of the injury of May 2, 1986, and the resulting laminectomy. According to Dr. Arendall, Ms. Boone's EMG shows nerve damage as the result of the disc rupture, and the damage is permanent. He made no attempt to assess the percentage of anatomical impairment but deferred to the treating and operating surgeon, Dr. Gaw. Dr. Gaw testified that Ms. Boone's physical activities are limited by the pain that radiates from her low back down the left leg, and that she cannot stand, sit or walk for any extended period of time, nor do work that requires lifting, stooping or bending. His assessment of her physical disability is twenty-five percent to the body as a whole, with one-half of the disability being due to the May 2, 1986, injury. According to him the impairment rating is based on guidelines set forth in the American Medical Associates Guide to the Evaluation of Impairment Rating and the Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment. Both Dr. Arendall and Dr. Gaw expressed the opinion that Ms. Boone would be benefited by nerve decompression surgery, which Ms. Boone declined to have.

■ Appellants insist that Dr. Gaw's testimony is so self-contradictory and speculative that it has no probative value on either the issue of medical causation, the issue of permanency of disability, or the assessment of physical impairment. We do not view Dr. Gaw's testimony in the same light as do the appellants, but are of the opinion that it is credible and that it supports the findings of the trial judge that Ms. Boone

has a permanent anatomical disability as the result of the on-the-job injury of May 2, 1986.

The argument of appellants that the assessment of Ms. Boone's physical impairment is premature is predicated upon the statement by Dr. Gaw that he did not believe Ms. Boone had received the maximum benefit of medical treatment. The statement was made during the deposition taken on May 2, 1988, two years after the on-the-job accident, and eighteen months after Ms. Boone underwent surgery. In our opinion the statement was made with the thought of the recommended nerve decompression surgery in mind. But in any event, we note that Dr. Gaw went on to testify that "in all likelihood the impairment probably will not change."

■ As heretofore noted, the trial judge concluded from all the evidence that plaintiff has a permanent partial disability of fifty percent to the body as a whole as the result of the May 2, 1986, injury. Neither party is satisfied with this finding. Ms. Boone thinks it should be greater, the appellants think it should be lower. It is settled that once permanent anatomical disability has been established by competent medical testimony, the trial judge is called upon to consider the physical limitations of the worker and such other factors that have a bearing on the worker's ability to earn wages on the open labor market as past work history, job skills and training, education, prospects of rehabilitation, and job opportunities for those with the disability of the worker in question. *See Bennett v. Howard Johnson Motor Lodge*, 714 S.W.2d 273 (Tenn.1986); *Holder v. Liberty Mutual Insurance Company*, 587 S.W.2d 372 (Tenn.1979). The trial judge commented on several of these factors, such as education, past work history and job skills and training, in determining the percentage of permanent partial disability. We also have considered these factors and the physical limitations of Ms. Boone and have concluded that the evidence does not preponderate against the trial judge's finding that Ms. Boone is not now totally and permanently disabled, nor against his finding that

the permanent partial disability attributable to the May 2, 1986, injury is fifty percent to the body as a whole.

■ Appellants also have questioned the direction of the trial judge that the permanent partial disability benefits due appellee be paid in a lump sum. Our attention has been called to the fact that appellee did not file a motion asking for payment of benefits in a lump sum, that no evidence was introduced during the trial to establish a need for a lump sum payment, and that the trial court's opinion does not contain a finding that payment of benefits should be in a lump sum. In *Smith v. Gallatin Nursing Home,* 629 S.W.2d 683 (Tenn. 1982), it is pointed out that:

> The action of the trial judge in ordering commutation has serious consequences both for the employee or dependents and for the employer and its insurer. It should not be ordered perfunctorily or without a careful inquiry by the trial judge as to all facts and circumstances.

The employee has the burden of showing that it is in his best interest that the award of benefits be paid in a lump sum rather than in installments. This can only be done by the introduction of evidence sufficient to convince the trial judge that the employee has a special need. *See Flowers v. South Central Bell Telephone Co.,* 672 S.W.2d 769 (Tenn.1984). No evidence showing such a need was introduced in this case, leaving this Court with no alternative but to set aside that part of the judgment calling for the payment of the permanent partial disability benefits in a lump sum. In all other respects, the judgment of the trial court is affirmed. The cause is remanded to the trial court for enforcement of its decree and consideration of other issues as they may arise. Costs of the appeal are adjudged against appellants, BICS of Tennessee, Inc., and Aetna Life and Casualty Insurance Company.

DROWOTA, C.J., and FONES, HARBISON, and O'BRIEN, JJ., concur.