FILED
Dec 02, 2025
09:42 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT GRAY

| | |
|---|---|
| **TERRY GANDY,** ) | **Docket No: 2023-02-03636** |
| **Employee,** ) | |
| **v.** ) | **State File No:860226-2023** |
| **MARTEN TRANSPORT, LIMITED,** ) | |
| **Employer.** ) | **Judge Brian K. Addington** |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

Mr. Gandy asked the Court to order Marten Transport to provide medical and temporary disability benefits and attorney's fees during an expedited hearing on November 12, 2025. The issue is whether Mr. Gandy is likely to prove at trial that his injuries arose primarily out of his employment. For the reasons below, the Court holds he is likely to prove entitlement to some of the requested benefits.

### Claim History

*The injury and treatment*

Mr. Gandy worked for Marten Transport as a truck driver. On the day he was injured, his truck's trailer was divided into different refrigerated sections called "bulkheads" that were secured by safety belts. When he tried to unscrew a bulkhead that was either tightly wound or frozen, it unexpectedly popped out and scratched his arm just above his wrist. Mr. Gandy estimated the scratch was about two inches long and said it did not bleed much. He did not tell his supervisor that he scratched his arm, nor was he concerned about it.[1] He wiped the wound with a wet paper towel, applied an antibiotic cream and bandage, and continued working.

---

[1] Mr. Gandy also provided a statement that he cut his arm on the truck door.

1

Mr. Gandy started noticing changes in the wound late the next day. He testified that his skin began to turn black, but he unloaded in Kentucky and drove to Goodlettsville to pick up another shipment. When he bent over to hook up to his trailer, he became very nauseated and began retching and vomiting. He was very fatigued afterwards but had no idea that his symptoms were related to his injury. He took a nap and worked another eight-hour shift.[2]

Eventually, Mr. Gandy arrived at his drop-off location. When he took his transport log forms to the office, the office guards thought he was intoxicated. One of his coworkers noticed his behavior and spoke with his supervisor, who decided to take him to the hospital.

At some point before going to the hospital, Mr. Gandy lost control of his bodily functions and soiled his clothing. The hospital sent him to Vanderbilt Medical Center by med flight. There it was determined he had group A streptococcus and necrotizing fasciitis. The doctors diagnosed a flesh-eating disease, amputated his left arm, and performed multiple surgeries to remove infections in his right arm. Mr. Gandy did not return for further treatment after he was discharged. He was unable to pay for treatment, and Marten denied the claim. The medical bills total $749,523.23.

Marten initially offered two physician panels, and Mr. Gandy selected Karen Bloch but never saw her due to Marten's denial. He testified he needs treatment because he has phantom limb pain, tenderness, numbness, and tingling, and he described mental symptoms associated with his amputated arm. He has weakness in his remaining arm and is unable to lift a gallon of milk. He testified that he would not be able to return to work as a truck driver with one arm.

*Medical Evidence*

Both parties sought independent medical reviews of Mr. Gandy's physical condition.

Dr. Michael Gelfand reviewed medical records and gave a causation opinion for Mr. Gandy. He responded to a medical questionnaire that:

- Strep A can enter the body through skin trauma.
- Mr. Gandy's underlying medical conditions (vascular disease, lung cancer, smoking) contributed to the severity of the flesh-eating disease.
- The laceration that occurred at work primarily caused his left arm amputation.

---

[2] Sometime during his shift, he requested dispatch to go home. This request was denied because there were no relief drivers.

Dr. Gelfand gave a deposition and concluded that the laceration to Mr. Gandy's left arm allowed the bacteria to enter his body and spread through his bloodstream, right arm, and entire body. He causally related Mr. Gandy's necrotizing fasciitis and amputation to the work injury, stating that the skin injury was "the entry point of the infection." Dr. Gelfand reviewed Mr. Gandy's medical treatment for the work injury and determined it was reasonably necessary.

Dr. Anthony Cumbo also reviewed Mr. Gandy's medical records. During Dr. Cumbo's deposition he stated his doubts as to whether Mr. Gandy was cut at work in the manner he described. He noted that Mr. Gandy was encephalopathic (had generalized brain dysfunction) and had an abrasion and bruising on his left-upper arm but not near his wrist or hand. He further testified that, assuming the cut did occur at work, Mr. Ganby's immuno-compromised health was the primary reason that his infection worsened and caused the need for treatment.[3]

Mr. Gandy also underwent a review of his mental condition with Dr. Greg Kyser, psychiatrist. Dr. Kyser reviewed Mr. Gandy's medical records and interviewed him. He noted that Mr. Gandy took medication for preexisting depression. His primary care doctor increased the prescription due to the work injury. Dr. Kyser found that Mr. Gandy suffered a mental injury primarily related to his work that caused an increased dosage of the antidepressant. He said that Mr. Gandy should continue quarterly treatment for medication management.

*Expedited hearing*

Both Mr. Gandy and his wife testified during the hearing.

Mr. Gandy appeared gaunt and exhausted, and he coughed frequently. He acknowledged an incomplete memory of events near the time he was injured, as well as discrepancies in his testimony about the accident and previous declarations. But he reiterated that he knew of no cuts on his body during his weekend at home before his injury. He also testified that he underwent heart surgery and cancer treatment after his work incident. He said he earned between $1,500 and $2,000 a week after taxes, but neither party offered a wage statement.

Jamie Gandy testified that Mr. Gandy did some light work at home the weekend before his injury. She was unaware of him sustaining a cut before he left for work. They both testified that his injury has changed what he can and cannot do around the house and how he feels about himself.

---

[3] Mr. Gandy has since been diagnosed with lung cancer and vascular problems and is a smoker.

Mr. Gandy argued that he was entitled to past temporary disability benefits, payment of past medical treatment, current medical treatment, and attorney fees for Marten's denial of his claim.

Marten argued that Mr. Gandy gave inconsistent stories of how he was injured and that his own body caused the need for medical treatment. It asserted that even if the cut happened at work, it would not have made him ill if he had been healthy.

**Findings of Fact and Conclusions of Law**

Mr. Gandy must show a likelihood of prevailing at a hearing on the merits that he is entitled to medical and temporary disability benefits. Tenn. Code Ann. § 50-6-239(d)(1) (2025); *McCord v Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Injuries Arising out of employment and benefits*

Mr. Gandy must prove that his injury arose primarily out of and in the course and scope of his employment. This includes the requirement that the injury is caused by a "specific incident, or set of incidents, . . . and is identifiable by time and place of occurrence." Further, he must show "to a reasonable degree of medical certainty that [the incident] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *Id.* § 50-6-102(12)(A)-(D).

Marten asserted that Mr. Gandy provided differing statements about the date of his injury and its circumstances. Although some minor discrepancies exist in Mr. Gandy's account of how and when the incident happened, the evidence supports his claim that he was cut while making a delivery for Martin. Further, these inconsistencies can be attributed to his exhaustion, the effects of the flesh-eating bacteria, and extensive surgery. Additionally, his memory problems are understandable, given the time that has elapsed since the injury, as well as his heart surgery and cancer treatment. "Even if minor and insignificant details vary, an injured worker should not be penalized simply for being a poor historian." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 677 (Tenn. 1991).

Finally, although Marten questioned the facts of the accident, it did not offer any proof of another incident. Both Mr. and Ms. Gandy testified that they knew of no cut on Mr. Gandy when he left for work. The Court observed Mr. Gandy and finds the discrepancies are reasonable under these circumstances and that he is likely to prove the time and place of occurrence.

Turning to causation, when expert opinions differ, the Court may consider, among other things, "the qualifications of the experts, the circumstances, of their examination, the

4

information available to them, and the evaluation of the importance of that information by other experts." *Id.* at 676. Here, the experts are well-qualified, so that factor is neutral. Both doctors determined the need for his treatment including the amputation was necrotizing fasciitis, so they agreed on that point.

As to the circumstances of their examination, both doctors performed record reviews and reviewed the information obtained after Mr. Gandy's injury, including his non-work-related medical conditions. This factor slightly favors Dr. Cumbo, as it appears he also reviewed Dr. Gelfand's deposition.

As to the importance of the information, both doctors determined that if Mr. Gandy were cut at work, it might have caused a strep infection, but they differ on what allowed it to progress to necrotizing fasciitis. Both doctors agreed that for the serious infection Mr. Gandy had, it required some sort of trauma or underlying immunity deficiency. This factor is neutral.

The doctors differed on what caused the need for treatment. Dr. Gelfand stated that it was strep entering Mr. Gandy's body through the cut that caused the necrotizing fasciitis and need for treatment, while Dr. Cumbo stated that Mr. Gandy's underlying compromised immune system caused the need for treatment. In other words, according to Dr. Cumbo, if Mr. Gandy were healthy, even if he were cut at work, he would have been just fine.

Even if the Court were to accept Dr. Cumbo's opinion, it cannot agree with Marten's argument. It is well-settled that an employer takes its employees as it finds them. *Flowers v. South Cent. Bell Tel. Co.,* 672 S.W.2d 769, 770 (Tenn. 1984). Thus, an employee is entitled to benefits if the employee's work causes an actual progression or advances a preexisting condition. *See Hill v. Eagle Bend Mfg.,* 942 S.W.2d 483, 488 (Tenn. 1997) (employer is responsible for benefits, even though the employee may have been suffering from a serious preexisting condition, if the employment causes "an actual progression or aggravation of the prior disabling condition" that produces increased pain that is disabling). It follows that if an employee's underlying condition causes an unusually significant reaction to a work injury, that condition does not foreclose recovery for the resulting treatment.

Thus, the question is not whether Mr. Gandy's pre-existing condition worsened his injury but whether he sustained an injury and whether the need for treatment was primarily related to the injury. The Court accepts Dr. Gelfand's opinion on the question.

For these reasons, the Court finds that Mr. Gandy is likely to prove at a hearing on the merits that his work accident was the primary cause of the necrotizing fasciitis and the need for his hospitalization, surgery, and need for continued medical treatment. Marten shall authorize Dr. Karen Bloch to provide ongoing medical treatment, as Mr. Gandy chose her from a panel of physicians.

5

Mr. Gandy also asserted a need for psychiatric treatment. Because Marten denied the claim, no authorized doctor has recommended psychiatric treatment. However, Dr. Kyser found that Mr. Gandy suffered a work-related mental injury and needs quarterly medication management for the foreseeable future. Marten offered no contrary medical opinion. The Court finds he is likely to succeed at a hearing on the merits in proving he is entitled to a panel of psychiatrists.

On Mr. Gandy's request for temporary disability, the Appeals Board listed the following requirements for an employee to be eligible for these benefits: "(1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability." *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Also, he must prove his average weekly wage so the Court can determine his compensation rate. *Id.* § 50-6-102(3)(A).

Mr. Gandy testified he earned between $1,500 to $2,000 per week but did not provide exact amounts. Marten did not introduce a wage statement. Under these circumstances, the Court cannot set a compensation rate or calculate temporary disability benefits. Presumably, Mr. Gandy could not work while he was hospitalized, but the record does not establish his period of disability after his release. However, the Court finds under *Jones* that he would be entitled to temporary total disability benefits *at least* from the day after he last worked until his release from the hospital.

*Fees*

Lastly, the Court turns to the requested attorney's fee under section 50-6-226(d)(1)(B) for Marten's alleged unreasonable denial of benefits. A decision to award attorney's fees and expenses at an interlocutory stage of a case should be made only in extremely limited circumstances. *Thompson v. Comcast Corp.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *29 (Jan. 30, 2018). The Court finds that limited circumstances are not present here.

**THEREFORE, IT IS ORDERED AS FOLLOWS:**

1. Marten shall pay Mr. Gandy's past medical expenses in the amount of $749,523.23 and furnish ongoing medical treatment with Dr. Bloch for his physical injuries. Marten shall offer a panel of psychiatrists for his mental injury.

2. Mr. Gandy has proven he is entitled to temporary total disability benefits from the day after he entered the hospital until his release, but the Court is unable to compute the amount of benefits owed at this time. The Court reserves ruling on this issue.

3. Mr. Gandy's request for attorney fees is also reserved.

6

4. The parties shall attend a status hearing on **January 23, 2026**, at **3:00** p.m. Eastern time. They must call **855-543-5044** to participate in the hearing.

5. Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3).

**ENTERED December 2, 2025.**

Brian K. Addington
**BRIAN K. ADDINGTON, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Affidavit of Terry Gandy
2. Second Affidavit of Terry Gandy
3. Denial letter
4. (collective) Dr. Michael Gelfand's medical questionnaire responses[4]
5. Employer's Notice of Filing of Medical Records
6. Deposition of Jamie Gandy
7. Deposition of Dr. Michael Gelfand
8. Deposition of Dr. Anthony Cumbo
9. Rebuttal Evidence
10. Employee's combined medical records
11. Physician Panels
12. Photographs
13. Deposition of Terry Gandy

---

[4] Marten objected to the leading questions in the questionnaire. The Court overrules the objection.

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent on December 2, 2025.

| Name | First Class Mail | Email | Service Sent to: |
|------|------------------|-------|------------------|
| Ashley McGee, Employee's Attorney | | X | ashleymcgee@rockylawfirm.com connie@rockylawfirm.com |
| Connor Sestak and Nick Akins, Employer's Attorneys | | X | csestak@morganakins.com nakins@morganakins.com plunny@morganakins.com |

_____

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

**Statement of the Issues on Appeal**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

**Parties**

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*